UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DONALD K. BASS, | ) | CASE NO. 1:11 CV 0940 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| WENDY'S OF DOWNTOWN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

    Before the Court is plaintiff *pro se* Donald K. Bass's above-captioned *in forma pauperis* complaint against his former employer, Wendy's Downtown, Inc.("Wendy's"). Mr. Bass alleges Wendy's discriminated against him based on race and age in violation of "Title VII of the Age Discrimination in Employment Act." (Compl. at 1.) He claims further that he was harassed by electronic mail and that Wendy's intentionally failed to promote him in violation of the Civil Rights Act of 1991. Mr. Bass seeks $5,000,000.00 in damages.

*Background*

    Mr. Bass was employed at Wendy's for 13 years. The problems he encountered as an employee started, however, in 2005. He recounts an incident that year when he was referred to

as a "Goofy Bastard," but management failed to act when he reported the matter.

In 2007, Mr. Bass and another African American manager were told to take a polygraph test to determine who had stolen company funds. A female Caucasian employee, who worked in the same unit where the funds were missing, was not required to take the polygraph. Mr. Bass initially expressed concern over taking the test because he previously failed a polygraph administered by a former employee. Moreover, he ardently asserted his innocence. As predicted, he failed the test but was asked to return to work. The Area Director later reported that the funds were stolen by an employee who was responsible for transporting funds to the bank. The following month, Mr. Bass filed a sex and race discrimination charge with the Ohio Civil Rights Commission based on alleged disparate treatment regarding the polygraph test, as well as disparate discipline based on race regarding his tardy arrival to work. Mr. Bass subsequently withdrew the charges after coming to an agreement with Wendy's through mediation.

Two years after the polygraph incident, Mr. Bass was allegedly assaulted by General Manager Shawn Forth, whose live-in girlfriend was the subject of Mr. Bass's terminated sex discrimination charge. Again, Wendy's management failed to act even after the manager snatched Mr. Bass's eyeglasses off of his face and threw them to the floor. Mr. Bass filed a police report over the incident. Shortly thereafter, Mr. Forth allegedly sent an electronic message to Area Director Bill Kobititsch describing Mr. Bass in generally derogatory terms.

While working in the Wendy's store on December 29, 2009, Mr. Bass was robbed. During the incident he sustained injuries that resulted in a visit to the hospital. He does not disclose how long he stayed at home after the incident, but when he returned to work, Bill Kobititsch advised him that if he had stayed out of the restaurant any longer he would have been fired. Mr. Kobititsch

asked to personally examine Mr. Bass's injuries and accused him of faking the extent of injuries. The Director allegedly sent an email to all the units on January 18, 2010 advising that Mr. Bass would not be hired on a full time basis.

On January 25, 2010, Mr. Bass applied for Unemployment Benefits after he was "wrongfully terminated from Plaintiffs [sic] First and Primary place of employment." (Compl. at 3.) His request for unemployment benefits was initially approved, but some time thereafter Wendy's "decided to give Plaintiff one extra day, to intently [sic] deprive Plaintiff from receiving Unemployment Compensation Benefits." Id.  Mr. Bass then requested Wendy's provide him full-time status, but they refused. Mr. Bass claims that all the other Wendy's managers were employed 5 days per week for 40 hours, plus overtime.

Less than two weeks after Mr. Bass's request for full time status was denied, Wendy's advertised for a full time General Manager and Assistant Manager. The position was filled by a former employee "even though Plaintiff never left the company." (Compl. at 3.) The following month, the Area Manager distributed an email to all the units "out lining the 'New Don Bass Rule.'"[1] Id.

On September 18, 2010, Mr. Bass "resigned" after Bill Kobititsch falsely accused him of inappropriately touching a team member. "[S]ome time after the year 2011," Mr. Forth's girlfriend was rehired in a full time management position even though she had allegedly been fired three years earlier for theft. (Compl. at 3.)

During the course of a subsequent investigation with the Ohio Civil Rights Commission, Bill Kobititsch allegedly released Mr. Bass's private files regarding the polygraph test

---

[1] Mr. Bass does not disclose the contents of the "New Don Bass Rule" email.

in December 2010. In the cover letter containing this information, Mr. Bass alleges Mr. Kobititsch stated he used the polygraph information to deny Mr. Bass a full time management position. Mr. Bass claims this was a breach of trust and a violation of the "Polygraph Protection Act." He states that the Act prohibits an employer from denying an employee a promotion who fails a polygraph examination.

Attached to the Complaint is a Dismissal and Notice of Right to Sue from the Equal Employment Opportunity Commission (E.E.O.C.). The E.E.O.C. closed its file on Mr. Bass's charge and adopted the findings of the state or local fair employment practices agency. Mr. Bass timely filed his discrimination complaint in this court. See 42 U.S.C. § 2000e

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss any claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, Mr. Bass's Title VII claims regarding race, retaliation and age discrimination claims are dismissed, pursuant to 28 U.S.C. §1915(e).

*Title VII*

The Supreme Court has clarified that, at the pleading stage, a plaintiff is not required to allege facts to support a prima facie case of discrimination. See Swierkiewicz v. Sorema, 534 U.S. 506 (2002)(employment discrimination complaint need not contain specific facts establishing a prima facie case under the McDonnell Douglas [ v. Green, 411 U.S. 792 (1973)] framework). This

holding did not, however, eliminate the basic tenets of notice pleading.

Title VII of the Civil Rights Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Further, despite his passing assertion that Wendy's discriminated against him based on race, Mr. Bass has failed to state a claim for relief under Title VII.

As a threshold matter, Rule 8 of the Federal Rules of Civil Procedure requires, in relevant part:

> (1) a short and plain statement of the grounds upon which the court's jurisdiction depends. . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. P. 8(a). The Supreme Court explained that the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citing Papasan v. Allain, 478 U.S. 265, 286(1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

Even under the liberal notice pleading requirements of Rule 8 and the liberal perspective in which pro se complaints are generally viewed, Mr. Bass's complaint does not contain

even the minimum requirements of a "short and plain statement" of a claim showing entitlement to Title VII or age discrimination relief. See FED. CIV. R. P. 8(a).

The only alleged issue involving race took place in 2007. At that time, Mr. Bass claimed a female Caucasian employee was not, unlike he and another African American male, required to take a polygram test. The woman was also the live-in girlfriend of a Wendy's general manager. Later, this same employee was allegedly "terminated for thief [sic] of Company Money some three years ago." (Compl. at 1.) While Mr. Bass filed a sex and discrimination charge against Wendy's in 2007, he abandoned the claim once he reached an agreement with Wendy's. This fractured set of facts does not state a claim of discrimination based on race.

*Age Discrimination*

Mr. Bass's age discrimination claim similarly lacks merit. Contrary to Mr. Bass's assertions, Title VII does not protect employees from discrimination based on age. Not only does he fail to identify any relevant statute, he does not disclose his age in the Complaint. Under federal law, the Age Discrimination in Employment Act (ADEA) sets forth that:

> It shall be unlawful for an employer–
>
>> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

29 U.S.C. § 626.

While Mr. Bass is not required to make a prima facie case of discrimination at this stage, he has failed to most of the elements required for an ADEA claim; namely, that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse

6

employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected. See Barnett v. Dep't of Veterans Affairs, 153 F.3d 338, 341 (6th Cir.1998).

Even if Mr. Bass alleged he was over 40 years old, he did not allege he was otherwise qualified for the promotion he sought. Stating that he held the position "early on in [his] career at Wendy's" does not per se qualify him for the position in the present. While a failure to promote may be considered an adverse employment action in discrimination cases, see Hale v. Cuyahoga County Welfare Dep't, 891 F.2d 604, 606 (6th Cir.1989), this singular element is insufficient to state a claim of age discrimination. The most critical element is still an allegation that the successful applicant was substantially younger than Mr. Bass. There is no allegation that the employee hired for the position which Mr. Bass sought was significantly younger than he. Therefore, he has failed to state an age discrimination claim.

*Retaliation*

Mr. Bass states Wendy's retaliated against him by failing to promote him after he filed charges against it with the OCRC in 2007. In order to establish a claim of retaliation under Title VII, a plaintiff must allege (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000).

Filing charges with the ODRC would be an activity protected by Title VII. Clearly, Wendy's was aware of the act because it engaged in mediation with Mr. Bass to resolve his concerns. Three years passed, however, between the time Mr. Bass filed charges he later dropped,

and the year that he requested a promotion. During that three year period, his Complaint recounts disagreements with Wendy's regarding his tardiness and extended absences. It is difficult, therefore, to create a causal link between him filing charges against Wendy's with the OCRC in 2007 and his request for a promotion in 2010, when so many other admitted factors undermined his qualifications for a promotion. Even "[t]emporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection." Walcott v. City of Cleveland, No. 03-3979, 2005 WL 14982 (6th Cir. filed Jan. 3, 2005)(citing Hafford v. Seidner, 183 F.3d 506, 516 (6th Cir.1999)).

*Employee Polygraph Protection Act (EPPA)*

Under the EPPA, it is unlawful for an employer "directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector." 29 U.S.C. § 2002(1). The EPPA severely restricts the uses most private employers may make of any type of lie detector device. Michael F. Rosenblum, The Expanding Scope of Workplace Security and Employee Privacy Issues, 3 DEPAUL BUS.L.J. 77, 83 (1990–91); Note, Brad V. Driscoll, The Employee Polygraph Protection Act of 1988: A Balance of Interests, 75 IOWA L.REV. 539, 539 (1990)(noting that the EPPA sets forth employee-testing guidelines and safeguards to alleviate employment actions that may result from incorrect test evaluations and conflicting state laws). Section 2002 of the EPPA prohibits an employer from requiring an employee or applicant to take a lie detector test and also forbids any adverse action against an employee or applicant who fails or refuses to take a polygraph test, or who files a complaint, testifies, or exercises any right granted under the EPPA. See 29 U.S.C. § 2002; Campbell v. Woodard Photographic, Inc., 433 F.Supp.2d 857, 860 (N.D. Ohio 2006). To the extent Mr. Bass argues Wendy's was prohibited from

using the negative results of his polygraph examination to deny him a promotion, he may have stated a claim.

*Conclusion*

Based on the foregoing, Mr. Bass's Motion to Proceed in forma pauperis is granted. Further, his Title VII claims regarding **race, retaliation and age discrimination are dismissed** pursuant to 28 U.S.C. §1915(e). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[2] Mr. Bass's **claim that Wendy's violated his rights under the EPPA when it failed to promote him based on his polygraph results shall proceed**. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process. The Clerk's Office shall include a copy of this order in the documents to be served upon the defendant.

IT IS SO ORDERED.


Dated: August 18, 2011                     *s/     James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.