UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
DONALD K. BASS,                               :
                                              :   CASE NO. 11-CV-940
         Plaintiff,                           :
                                              :
    v.                                        :   OPINION & ORDER
                                              :   [Resolving Doc. Nos. 27, 40]
WENDY'S OF DOWNTOWN, INC.,                    :
                                              :
         Defendant.                           :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Pro Se-Plaintiff Donald Bass filed this lawsuit against Defendant Wendy's of Downtown, Inc. (Wendy's), alleging (1) that Wendy's unlawfully refused to promote him when he failed a polygraph test and (2) that Wendy's unlawfully disclosed the results of that test to the Ohio Civil Rights Commission. *See* [Doc. 23]. Wendy's moves for summary judgment, *see* [Doc. 27], and Bass opposes that motion, *see* [Docs. 28, 30]. For the following reasons, the Court grants Wendy's's motion for summary judgment.

I.

Plaintiff Bass and Defendant Wendy's had a long but rocky relationship. Bass worked for Wendy's from the late 1990s until he resigned in September 2010. In the early years Bass was a full-time Wendy's manager. Then, in 2002, Bass took a full-time position with White Castle, although he continued his employment with Wendy's on a part-time basis.

-1-

Case No. 1:11-CV-940
Gwin, J.

Most of Bass's employment history with Wendy's is irrelevant to the claims in this lawsuit, and the Court will not recount it in detail. It is enough to say that Bass has long been frustrated with Wendy's and its upper management, which Bass suspects is prejudiced against him. Wendy's, similarly, has long been frustrated with Bass, who Wendy's says was a difficult employee.

The truth, as best reflected in the record, is somewhere in the middle. Bass was no model employee; he earned twenty-two corrective notices at Wendy's, for tardiness, food-safety violations, and other problems. In the end, Wendy's forced Bass to resign after a camera caught Bass inappropriately touching a female colleague. Wendy's, for its part, thought little of Bass; its management joked about Bass being a thief and remained silent when other employees referred to Bass in derogatory and witless terms. That the parties' mutual immaturity has brought them to this Court is no surprise, and there is fault to go around, legally cognizable or not.

In any event, whatever hard feelings the parties may have about their fourteen-year relationship (and they do), this case is a limited one—a suit for violations of the Employee Polygraph Protection Act (EPPA), 29 U.S.C. § 2001, *et seq.*—and it arises from a limited set of facts:

In July 2007, a cash deposit went missing from Wendy's. Few people had access to the deposit. Bass was one who did. As part of its investigation into the missing funds, Wendy's asked Bass and another manager to submit to a polygraph examination. Both managers agreed. The other manager passed his polygraph examination; Bass failed. Following his failed examination, Bass continued to work for Wendy's as a part-time employee.

More than two years passed. Then, in February 2010, Wendy's posted an opening for two full-time positions—General Manager and Assistant Manager. Bass expressed his interest in the positions to Wendy's, but was not considered. Wendy's hired someone else to fill the General

-2-

Case No. 1:11-CV-940
Gwin, J.

Manager position.

A few months later, in September 2010, Bass inappropriately touched a female employee, who reported the incident. A review of a security tape confirmed the woman's account, and Wendy's offered Bass the choice either to resign or to be fired. On September 18, 2010, Bass resigned.

Two months later, Bass filed a complaint against Wendy's with the Ohio Civil Rights Commission (OCRC). Bass alleged that Wendy's's decision not to consider him for the February 2010 General Manager and Assistant Manager positions was both age discrimination and retaliation for Bass's previously filed charges of discrimination. On January 10, 2011, Wendy's filed a Position Statement with the OCRC, responding, point by point, to Bass's allegations. In response to Bass's allegation that Wendy's had discriminated against Bass because of his age, Wendy's wrote:

> Don [Bass] was not considered as a viable candidate for the General Manager and Assistant Manager positions that were advertised via Craigslist in February 2010. The reason Don was not considered was due to his employment history with Wendy's. Don's employment history includes the following:
> - 22 Corrective Action Notices have been written on Don (#9). Seven while being employed full time for approximately 4½ years and 15 notices while employed part time for the past 8½ years. These notices range from security violations, food safety violations, tardiness issues, cost control problems, etc.
> - *In July 2007, there was a missing bank deposit from the restaurant Don was working at. There were two managers that had access to the deposit. Of the two managers, the other manager passed a polygraph and Don failed his polygraph test. This created a trust issue. If this is relevant, we have documentation of Don's failed polygraph.*
> - Don has been defiant and insubordinate to his superiors over the past couple of years, not following specific instructions and in some cases, disregarding what was told to him. He also began to refuse to sign written Corrective Action Notices after talking to his attorney.

Case No. 1:11-CV-940
Gwin, J.

Wendy's's OCRC Position Statement, at 2 (emphasis supplied).[1]

Bass's lawsuit in this Court is rooted in the above-italicized bullet point from Wendy's's OCRC Position Statement. First, Bass claims, EPPA prohibited Wendy's from disclosing the results of his polygraph examination to the Commission. Second, Bass says, the Position Statement reflects that Wendy's discriminated against him on the basis of his failed polygraph examination, also a violation of EPPA. Wendy's has moved for summary judgment on both claims. The Court considers the viability of those claims in turn.

II.

A. Bass's Unlawful-Disclosure Claim

Title 29, United States Code, Section 2008 provides that "[a] person, other than the examinee, may not disclose information obtained during a polygraph test, except" that "[a]n employer . . . for whom a polygraph test is conducted may disclose information from the test only to," among other entities not relevant here, "a governmental agency, but only insofar as the disclosed information is an admission of criminal conduct." 29 U.S.C. § 2008.[2]

Wendy's acknowledges that its Position Statement to the OCRC disclosed that Bass failed a polygraph examination relating to the missing bank deposit. *See* [Doc. 27, at 11]. Nevertheless, Wendy's says, it is entitled to summary judgment on this claim because (1) the disclosure was made

---

[1] Neither party has provided the Court with the entire OCRC record, though both paraphrase portions of it. Fortunately, because it is a public record the Court was able to locate it and may rely on it. *See* Fed. R. Evid. 201. To the extent that the file contains admissions of the parties, those admissions are admissible for their truth. *See* Fed. R. Evid. 801(d)(2).

[2] EPPA also permits an employer to disclose information acquired from a polygraph test to "any court, governmental agency, arbitrator, or mediator, in accordance with due process of law, pursuant to an order from a court of competent jurisdiction." 29 U.S.C. § 2008(b)(3) & (c)(1). Wendy's has not argued that this exception permitted its disclosure of the results of Bass's polygraph examination to the Ohio Civil Rights Commission, and nothing in the record shows that the disclosure was made pursuant to a court's order.

-4-

Case No. 1:11-CV-940
Gwin, J.

to "a governmental agency" and "the disclosed information is an admission of criminal conduct," 29 U.S.C. § 2008(c)(2); and (2) Bass suffered no damage from that disclosure.

Wendy's first argument—briefed in a single sentence, *see* [Doc. 27, at 11]—is incorrect. During the examination, Bass *denied* stealing the funds. Denial is inconsistent with "admission." Moreover, the *polygraph examiner's conclusion* that Bass stole is not *Bass's admission* that he stole.

Wendy's second argument, however, has traction. Even though Bass's Amended Complaint requests "Five Million Dollars" in damages, [Doc. 23, at 4], and even though employers who violate EPPA are "liable for such legal or equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits," 29 U.S.C. § 2005(c)(1), Bass has no evidence that he was in any way damaged by Wendy's's disclosure of his failed polygraph examination to the OCRC.[3/] In his two oppositions to Wendy's's motion for summary judgment, *see* [Docs. 28, 30], Bass cites no "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), demonstrating any damage flowing from Wendy's's disclosure. Indeed, Bass does not even *allege* in those filings that he was damaged by that disclosure. *See* [Docs. 28, 30].[4/] And at his deposition Bass was unable to articulate or "remember" any damages stemming from that disclosure. *See* [Doc. 27-3, at 5:11-16:15]. Accordingly, even if Wendy's violated EPPA when it disclosed Bass's failed polygraph examination, summary judgment on Bass's unlawful-disclosure claim is appropriate. *See Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 347 n.11 (4th

---

[3/] Bass has never requested any specific equitable relief.

[4/] In his second opposition to summary judgment, Bass claims that "Defendants actions rises to the Level of malicious and reckless violations of the law," [Doc. 30, at 3], in an attempt, it seems, to establish some claim for punitive damages. But even if EPPA permits a punitive-damages award, Bass has no evidence supporting that type of relief. *See Mennen v. Easter Stores*, 951 F. Supp. 838, 866 (N.D. Iowa 1997) ("Even assuming that an award of punitive damages is available under the EPPA, because the record is absent any evidence indicating a willful or reckless disregard for Mennen's rights, the court finds that an award of punitive damages is not warranted.").

Case No. 1:11-CV-940
Gwin, J.

Cir. 2008) ("Even if the district court finds SunTrust 'used' or 'referred to' the polygraph examination results in violation of § 2002(2), Worden must prove he suffered damages as a direct result of the violation.").

### B. Bass's Failure-to-Promote Claim

Title 29, United States Code, Section 2002(3)(B) makes it "unlawful for any employer engaged in or affecting commerce . . . to discharge, discipline, discriminate against in any manner, or deny employment or promotion to . . . any employee or prospective employee on the basis of the results of any lie detector test . . . ." If an employer violates this section, it "shall be liable to the employee or prospective employee affected by such violation . . . for such legal or equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits." 29 U.S.C. § 2005(c)(1).

Bass claims that Wendy's discriminated against him because of his failed polygraph test. Specifically, Bass says, Wendy's refused to consider him for the full-time General Manager and Assistant Manager positions that were posted in February 2010.

If Wendy's's Position Statement to the OCRC is to be believed, Bass is correct—Wendy's had a "trust issue" with Bass stemming from his failed polygraph test. Wendy's's OCRC Position Statement, at 2. For that reason, among others, Bass "was not considered as a viable candidate for the General Manager and Assistant Manager positions that were advertised . . . in February 2010." *Id.*

That evidence notwithstanding, Wendy's makes a variety of arguments in support of summary judgment on this claim. First, it says, Bass signed a waiver relinquishing any claim he might have had arising out of the polygraph examination. But "[t]he rights and procedures provided

-6-

Case No. 1:11-CV-940
Gwin, J.

by [EPPA] may not be waived by contract or otherwise, unless such waiver is part of a written settlement agreement agreed to and signed by the parties to the pending action or complaint under this chapter." 29 U.S.C. § 2005(d).

Second, Wendy's says, it did not fail to promote Bass; "He was a manager at the time of the examination, and he was still a manager at the time of his resignation." [Doc. 27, at 8]. But Bass was not considered for the *General Manager* position, the full-time position he wanted. Wendy's refused to consider Bass "as a viable candidate" for that position. Wendy's's OCRC Position Statement, at 2.

Third, Wendy's says, Bass has no evidence that its decision not to promote Bass to General Manager had anything to do with the failed polygraph examination. That might be true, were the Court to ignore Wendy's explicit statement to the contrary. *See id.*

Finally, Wendy's argues—for the first time in its reply brief—that summary judgment is appropriate because, irrespective of Bass's failed polygraph examination, it would never have promoted Bass to the full-time General Manager or Assistant Manager positions. Only here does Wendy's make any headway.

Wendy's's argument, though not explicitly presented as such, is that a claim under EPPA is analogous to a claim under Title VII, such that when an employee alleges a "mixed-motive" violation of EPPA's prohibition on discrimination—*i.e.* "my employer discriminated against me on the basis of both my failed polygraph examination and other, legitimate things"—the burden-shifting framework recognized in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion), applies. Under that framework, a plaintiff must first prove that an impermissible factor "played a motivating part in an employment decision," at which point "the defendant may avoid a finding of

-7-

Case No. 1:11-CV-940
Gwin, J.

liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [impermissible factor] into account." 490 U.S. at 258.

Although the Sixth Circuit has not yet had the opportunity to consider whether the *Price Waterhouse* framework is applicable in an EPPA-discrimination case, the Fourth Circuit has concluded that "[a]pplication of the mixed-motive analysis to claims under the EPPA [] seems logical and appropriate" and has applied it to affirm a district court's grant of summary judgment to a defendant-employer. *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 347 n.11 (4th Cir. 2008). The Court agrees with and follows the Fourth Circuit in concluding that EPPA's prohibition against discrimination "on the basis of the results of any lie detector test," 29 U.S.C. § 2003(3)(B), requires, in a mixed-motive case like Bass's,[5] proof from the employee that the failed polygraph examination was a motivating factor in the adverse employment decision. At that point, the burden shifts to the employer to prove that it would have made the same adverse employment decision had it not taken the failed polygraph examination into account.

Applying that framework to this case, the Court concludes that summary judgment is appropriate. Bass has established that his failed polygraph examination was a motivating factor in Wendy's's decision not to promote him to the full-time General Manager or Assistant Manager positions. Indeed, Wendy's cited the failed polygraph to the OCRC as one part of Bass's troubled employment history precluding his consideration for those full-time positions. *See* Wendy's's OCRC Position Statement, at 2. Accordingly, the burden shifts to Wendy's to show that it would

---

[5] Were the Court to construe Bass's claim as a "single-motive" discrimination claim, it would similarly apply the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. Because Wendy's has presented a number of legitimate, non-discriminatory reasons for denying Bass the promotion, and because Bass has no evidence that those reasons are mere pretext, the Court would grant summary judgment to Wendy's on a single-motive claim.

Case No. 1:11-CV-940
Gwin, J.

not have considered Bass for those positions even if it had not taken the failed polygraph into account.

On this record, it is abundantly clear that Wendy's would not have promoted Bass to full-time General Manager or Assistant Manager even if it was unaware of Bass's failed polygraph. First, Wendy's's Area Director, William Kobetitsch, says as much, *see* [Doc. 27-1], and Bass has no evidence to rebut Kobetitsch's affidavit. Second, Bass regularly was "defiant and insubordinate to his superiors," refused to "follow[] specific instructions," and "disregard[ed] what was told to him." [Doc. 27-3, at PageID 258]. Third, Bass had a history of being irresponsible; he had received twenty-two corrective notices, for issues ranging from "security" and "food safety violations" to "tardiness" and "cost control issues." [Doc. 27-1]. For all of these reasons, Wendy's "did not want to provide Mr. Bass full-time status." *Id.*

Because any reasonable juror would find that Wendy's would not have promoted Bass irrespective of his failed polygraph, there is no genuine issue of material fact on Bass's failure-to-promote claim. Accordingly, summary judgment on this claim is appropriate.

III.

For these reasons, the Court **GRANTS** Wendy's's motion for summary judgment, [Doc. 27]. Bass's motion to strike Wendy's's proposed stipulations, [Doc. 40], is **DENIED AS MOOT**.

IT IS SO ORDERED.

Dated: May 1, 2012          s/ *James S. Gwin*
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE